UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITCHELL MILAN, d/b/a
BIRMINGHAM CENTER
FOR COSMETIC DENTRISTY,                    Case No. 20-cv-12222

                    Plaintiff,             Paul D. Borman
                                           United States District Judge
v.

THE CINCINNATI INSURANCE
COMPANY,

                    Defendant.
_____/

**OPINION AND ORDER:**
**(1) GRANTING DEFENDANT THE CINCINNATI INSURANCE**
**COMPANY'S AMENDED MOTION TO DISMISS PLAINTIFF'S SECOND**
**AMENDED COMPLAINT (ECF NO. 20);**
**(2) GRANTING DEFENDANT THE CINCINNATI INSURANCE**
**COMPANY'S UNOPPOSED MOTION FOR LEAVE TO SUBMIT**
**SUPPLEMENTAL AUTHORITY (ECF NO. 24); AND**
**(3) GRANTING DEFENDANT THE CINCINNATI INSURANCE**
**COMPANY'S UNOPPOSED SECOND MOTION FOR LEAVE TO SUBMIT**
**SUPPLEMENTAL AUTHORITY (ECF NO. 25)**

This is an insurance coverage dispute related to business income lost as the

result of Coronavirus Disease (COVID-19) and the State of Michigan executive

orders that, in part, suspended all non-emergency dental procedures for

approximately two months in an attempt to slow the spread of COVID-19. Plaintiff

1

Mitchell Milan, DDS d/b/a Birmingham Center for Cosmetic Dentistry, sued Defendant, The Cincinnati Insurance Company, for Declaratory Judgment, breach of contract, appraisal, and violation the Michigan Uniform Trade Practices Act. Now before the Court are Defendant's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 20), Defendant's Motion for Leave to Submit Supplemental Authority (ECF No. 24), and Defendant's Second Motion for Leave to Submit Supplemental Authority (ECF No. 25). The motion to dismiss has been fully briefed, and because the two motions by Defendant for leave to file supplemental authority are not opposed, they are granted. The Court held a hearing on Defendant's Motion to Dismiss on Tuesday, October 19, 2021. For the reasons that follow, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Plaintiff Mitchell Milan, DDS d/b/a Birmingham Center for Cosmetic Dentistry, operates a dental office in Birmingham, Michigan that provides various types of dental services ranging from general dentistry to cosmetic dentistry. (ECF No. 18, Second Am. Compl. (SAC) ¶ 7, PageID.1829.) Plaintiff purchased a commercial property insurance policy, Policy No. ECF 0342108 (the Policy), from

2

Defendant Cincinnati Insurance Company "to protect the [Plaintiff's] business in the event of property loss and business interruption." (*Id.* ¶ 12, PageID.1830.) The Policy was in effect from August 1, 2018 to August 1, 2021. (*Id.*)

Plaintiff's dental practice, like most businesses, was detrimentally affected when it was forced to suspend or reduce its operations pursuant to civil orders enacted to stem the spread of COVID-19. (*Id.* ¶ 13, PageID.1830.) Beginning in March 2020, Michigan's Governor and the Michigan Department of Health and Human Services (DHHS) issued a series of civil orders that, in part, restricted entry into healthcare facilities. (*Id.* ¶¶ 66-67, PageID.1845-46.) In particular, Executive Order (EO) 2020-17 contained restrictions on medical and dental practices, restricting access to the businesses and preventing the performance of non-urgent dentistry procedures. (*Id.* ¶ 67, PageID.1845-46.) In addition, "essential" businesses, like Plaintiff's, had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, provide personal protective equipment to their workforce, and prohibit many customers from entering their facilities. (*Id.* ¶ 70, PageID.1846-47.)

Starting on or about March 21, 2020, Plaintiff began limiting its services to emergency dental care only, and it reopened when permitted, in accordance with Executive Orders, Stay at Home Orders, and the guidance from the American Dental

Association (ADA) and the Centers for Disease Control (CDC). However, at the time of filing this lawsuit, Plaintiff's business had not returned to full capacity as it was no longer permitted to perform cosmetic dentistry and elective procedures, which made up the majority of its business. (*Id.* ¶ 72, PageID.1847-48.) Plaintiff asserts that its business has suffered financial losses due to the Executive Orders, and that "[i]t is likely that patients, employees, and/or other visitors to the insured property over the months prior to, during, and after the government shutdown and Stay at Home orders … were infected with COVID-19 and thereby caused physical loss and damage to the property." (*Id.* ¶¶ 57, 73, PageID.1843, 1848.) Plaintiff alleges that it has sustained actual loss, including "sums spent to remediate physical damage to its property, such as for cleaning and disinfecting property, remodeling and reconfiguring physical spaces." (*Id.* ¶ 60, PageID.1844.) Plaintiff further alleges that it has sustained physical losses to its property "because of the presence and effect of COVID-19 fomites, and respiratory droplets or nuclei directly on the property." (*Id.* ¶¶ 61-62, PageID.1844.)[1]

---

[1] Plaintiff explains in its Response brief that "'[f]omite' means an object (such as a dish, doorknob, or article of clothing) that may be contaminated with infectious agents (such as bacteria or viruses) and serve in their transmission." (Pl.'s Resp. at p. 1, fn.1 (citing https://www.merriam-webster.com/dictionary/fomite (last accessed July 14, 2021).)

The Policy issued by Defendant to Plaintiff covered loss of business income and extra expenses incurred as a result of the suspension of business operations under circumstances delineated in the Policy. (ECF No. 19-1, Policy.) Plaintiff sought coverage for a its financial losses under various provisions of the Policy issued by Defendant. (SAC ¶ 86, PageID.1851.) Defendant denied coverage. (*Id*. ¶ 88, PageID.1852.) In its denial letter, Defendant maintained that coverage was unavailable under the business income, extra expense, and civil authority provisions of the Policy because Plaintiff did not sustain direct physical loss or damage to its property. (ECF No. 18-2, Denial Letter, PageID.2167-74.)

**B.     The Policy**

Defendant issued a policy of insurance to Plaintiff, Policy No. ECP 034 21 08, effective from August 1, 2018 to August 1, 2021. (ECF No. 19-1, Policy.) The pertinent parts of the Policy are form FM 101 05 16, the main Building and Personal Property Coverage Form, (*id.* at pp. 18-57), and form FA 213 05 16, additional Business Income (and Extra Expense) Coverage Form. (*Id.* at pp. 116-24.) Both forms use substantially identical language, and supply the Business Income, Extra Expense, and Civil Authority coverages Plaintiff seeks.

The provision for Business Income and Extra Expenses provides:

We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by *direct "loss" to property* at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

*** 

We will pay Extra Expense you sustain during the "period of restoration." Extra expense means necessary expenses you sustain … during the "period of restoration" that you would not have sustained *if there had been no direct "loss" to property* caused by or resulting from a Covered Cause of Loss.

(*Id.* at pp. 35-36, 116-17 (emphases added).) The Policy defines several of these terms:

Covered Cause of Loss means "direct loss" unless the "loss" is excluded or limited in this Covered Part.

*** 

"Loss" means *accidental physical loss or accidental physical damage*.

*** 

"Period of restoration" means the period of time that:

    a.    Begins at the time of direct "loss".

    b.    Ends on the earlier of:

6

(1)     The date when the property at the "premises" should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or

(2)     The date when business is resumed at a new permanent location.

(*Id.* at pp. 22, 55-56, 117, 124 (emphases added).)

The Policy's Civil Authority provision provides:

When a Covered Cause of Loss causes *damage to property other than Covered Property* at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that *prohibits access* to the "premises", provided that *both* of the following apply:

(a)     *Access* to the area immediately surrounding the damaged property *is prohibited by a civil authority* as a result of the damage; and

(b)     The action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property…..

(*Id.* at pp. 36, 117 (emphases added).)

## C.     Procedural History

In its Second Amended Complaint, Plaintiff asserts claims for: "Declaratory Judgment and Injunctive Relief" and "Breach of Contract" (Counts I through VI); Appraisal (Count VII); and Violation of the Michigan Uniform Trade Practices Act

(Count VIII). (SAC, PageID.1855-63.) Plaintiff claims that "[l]osses caused by COVID-19 and the related state and local Stay at Home Orders triggered the[] provisions of Defendant's Policy" because "Plaintiff's full operations have been largely suspended, and Plaintiff has lost revenue and business opportunities." (*Id.* ¶ 100, PageID.1854-55.)

Defendant filed a motion to dismiss Plaintiff's Second Amended Complaint on grounds that the unambiguous terms of the Policy preclude coverage. (ECF No. 20, Def.'s Am. Mot.)[2] Defendant contends that Plaintiff has failed to demonstrate any direct physical loss or physical damage to the property, which is an express requirement for any coverage under the Policy. Defendant further argues that Plaintiff's claims for an appraisal and penalty interest under the Michigan UTPA fail because they are contingent on a finding that the Policy provides coverage for the alleged losses.

Plaintiff filed a response in opposition to Defendant's motion, contending that the Policy does not require a tangible physical destruction or alteration to the

---

[2] Defendant initially filed a motion to dismiss on July 1, 2021 (ECF No. 19), and then filed an amended motion to dismiss on July 8, 2021, adding a Table of Contents and Table of Authorities (ECF No. 20). The Court will address only Defendant's amended motion to dismiss.

property, but includes "loss of use" of the property. Plaintiff contends, at a minimum, that the Policy terms are ambiguous and that Defendant's motion should be denied.

Defendant filed a reply brief re-asserting that the Policy's plain terms unambiguously require actual, tangible alteration to the property, and that the case law Plaintiff cites in its Response either does not support Plaintiff's theories or claims, or represents the minority view, and that the overwhelming majority of courts that have considered similar claims have dismissed those claims.

Defendant also filed a Motion for Leave to Submit Supplemental Authority, and a Second Motion for Leave to Submit Supplemental Authority, seeking to offer additional authority relevant to the Court's decision. (ECF Nos. 24, 25.) These motions were unopposed, and are granted.

Finally, the Court ordered the parties to file supplemental briefing addressing the impact of the Sixth Circuit's recent decision in *Santo's Italian Café LLC v. Acuity Insurance Company*, No. 21-3608, --- F.4th ---, 2021 WL 4304607 (6th Cir. Sept. 22, 2021.) (ECF No. 28, Order.) Both Plaintiff and Defendant filed their supplemental briefs on October 14, 2021. (ECF Nos. 29, 30.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state

9

a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the

10

defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514

11

(6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

## III.  ANALYSIS

In a diversity action, the Court applies the choice of law rules of the forum state. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). The SAC alleges that the Policy was issued to Plaintiff, a Michigan citizen, in Michigan, covering property located in Michigan, and the parties agree that Michigan law governs this dispute. *See Minges Creek, L.L.C. v. Royal Ins. Co. of America*, 442 F.3d 953, 956 (6th Cir. 2006) ("Both parties agree that because Michigan is the forum state and the place where [defendant's] insurance policy was written, Michigan law governs the interpretation of the insurance policy") (citation omitted).

12

Under Michigan law, "insurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Continental Ins. Co.*, 473 Mich. 457, 461 (2005). "[C]onstruction and interpretation of an insurance contract is a question of law[.]" *Henderson v. State Farm Fire & Casualty Co.*, 460 Mich. 348, 353 (1999). "An insurance contract must be enforced in accordance with its terms. We will not hold an insurance company liable for a risk it did not assume." *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111 (1999). "Terms in an insurance policy must be given their plain meaning and the court cannot create an ambiguity where none exists." *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 161 (1995). The Michigan Court of Appeals has further explained:

> However, if an ambiguity exists, it should be construed against the insurer. An insurance contract is ambiguous if its provisions are subject to more than one meaning. An insurance contract is not ambiguous merely because a term is not defined in the contract. Any terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries.

*McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439 (2010) (citation omitted).

"Michigan courts engage in a two-step analysis when determining coverage under an insurance policy: (1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage." *K.V.G. Props., Inc. v.*

*Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018) (citing *Auto-Owners Ins. Co.*

*v. Harrington*, 455 Mich. 377, 381 (1997)). The insured bears the burden of proving

that the policy covers the claimed losses, while the insurer carries the burden of

proving that a policy exclusion precludes coverage of an otherwise covered loss.

*Heniser*, 449 Mich. at 161 n.6 (citation omitted).

### A.   The Policy Requires "Direct Physical Loss" or "Direct Physical Damage"

Defendant asserts that the requirement of "direct physical loss" or "direct

physical damage" to property is a core element in property insurance policies like

the one issued to Plaintiff. (Def.'s Am. Mot. at p. 5, PageID.2605.) Indeed, both the

Business Income and Extra Expense provisions of the Policy in this case require a

"direct 'loss' to property," and "loss" is expressly defined to mean "accidental

physical loss or accidental physical damage." (Policy at pp. 35-36, 38, 116-17, 124.)

Plaintiff does not dispute that the Policy requires "direct physical loss" or "direct

physical damage" to property. (Pl.'s Resp. at p. 12, PageID.2649.) Thus, Plaintiff,

as the insured, must establish that there is a direct accidental physical loss or direct

accidental physical damage to property for any coverage under the Policy.

Defendant argues that direct physical loss requires a tangible, concrete

alteration to the property and that Plaintiff's claims fail because the SAC does not

allege any facts showing a tangible, physical alteration to Plaintiff's property. (Def.'s Am. Mot. at pp. 9, 18, PageID.2609, 2618.) Defendant cites to numerous federal courts in this District and in the Sixth Circuit, and even elsewhere throughout the country, holding that similar property insurance policies provide no coverage for income lost during pandemic-related business closures. (*Id.* at pp. 9-13, PageID.2609-13.) Defendant then cites to an additional 66 decisions rendered since the date Defendant filed its amended motion to dismiss that have considered this same issue and likewise ruled that similar policies do not provide coverage for income lost during pandemic-related business closures. (ECF Nos. 24, 25.)

Plaintiff asserts in its Response brief that the Policy does not further define "direct," "physical," "damage," or "loss," and contends that, applying the "plain and ordinary" meaning of these terms, "direct physical loss" does not require tangible destruction or alteration of the premises, but instead is broad enough to encompass an inability to use or possess the property. (Pl.'s Resp. at pp. 12-13, PageID.2649-50.) Plaintiff cites to several out-of-circuit federal district court decisions adopting this interpretation and finding that similar insurance policies cover income lost during pandemic-related business closures. (*Id.* at pp. 13-14, fn. 51, PageID.2650-

51.)[3] Plaintiff asserts a covered cause of loss based on the physical nature of the virus "in the form of fomites, and respiratory droplets or nuclei containing COVID-19 attached to insured property." (*Id.* at pp. 1-2, 5, PageID.2638-39, 2642.) Plaintiff argues that, at a minimum, the Court should find that the Policy is ambiguous and accordingly deny Defendant's motion to dismiss on that basis. (*Id.* at pp. 19-20, PageID.2656-57, citing *SalonXL Color & Design Grp., LLC v. West Bend Mut. Ins. Co.*, 517 F. Supp. 3d 725 (E.D. Mich. 2021).)[4]

---

[3] Plaintiff did cite to one case within the Sixth Circuit, from the Northern District of Ohio, *Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.*, 513 F. Supp. 3d 808 (N.D. Ohio 2021), in which the district court granted summary judgment to the plaintiff, finding that suspension of business operations due to COVID-19 constituted direct physical loss of or damage to property. However, that opinion was recently vacated and remanded by the Sixth Circuit in light of the Sixth Circuit's decision in *Santo's Italian Café LLC v. Acuity Insurance Co.*, as discussed *infra. In re Zurich Am. Ins. Co.*, No. 21-0302, 2021 WL 4473398, at *1 (6th Cir. Sept. 29, 2021).

[4] In *SalonXL*, the court found that the plaintiff, a hair salon that was forced to close due to the Executive Orders issued by the Governor, sufficiently pleaded a "direct physical loss of" its property where the plaintiff alleged that it was unable to use its property for its intended purposes due to COVID-19. *SalonXL*, 517 F. Supp. 3d at 729-30. In the instant case, the Plaintiff's dental practice was not forced to close completely by the Governor's Executive Orders, but rather had to limit its services to emergency care only. The *SalonXL* court nevertheless found that the policy's virus and bacteria exclusions, and the consequential losses exclusion, precluded the Business Income, Extra Expense and Civil Authority coverages plaintiff sought. *Id.* at 730-31 (finding that plaintiff only alleged a plausible claim under the policy's Communicable Diseases coverage).

16

After the initial briefing closed in this case, the Sixth Circuit considered a restaurant's claim for coverage under essentially identical policy language requiring "direct physical loss of or damage to" covered property, but which did not otherwise define "direct," "physical" or "loss." *See Santo's Italian Café, LLC v. Acuity Ins. Co.*, No. 21-3068, --- F.4th ---, 2021 WL 4304607, at *2 (6th Cir. Sept. 16, 2021). The Sixth Circuit considered whether "a pandemic-triggered government order, barring in-person dining at a restaurant, counts as 'direct physical loss of or damage to' the property" and found that the policy at issue did not cover the loss caused by the COVID-19 virus and government shut-down orders. *Id.* Specifically, the court found the insurance policy's terms, which required "direct physical loss of or damage to Covered Property," were not ambiguous, explaining:

> Nothing unexpected arises from consulting dictionary definitions of the key disputed terms of this clause: "direct physical loss of" property. "Direct" means "[e]ffected or existing without intermediation or intervening agency; immediate." *Oxford English Dictionary Online* (3d ed. 2021). "Physical" means "natural; tangible, concrete." *Id.* "Loss" means "[p]erdition, ruin, destruction; the condition or fact of being 'lost,' destroyed, or ruined," or "being deprived of." *Id.* And "property" means "any residential or other building (with or without associated land) or separately owned part of such building (as an apartment, etc.)," as well as "[s]omething belonging to a thing; an appurtenance; an adjunct." *Id.*

*Id.* The court continued:

> [w]hether one sticks with the terms themselves (a "direct physical loss of" property) or a thesaurus-rich paraphrase of them (an "immediate" "tangible" "deprivation" of property), the conclusion is the same. The policy does not cover this loss. The restaurant has not been tangibly destroyed, whether in part or in full. And the owner has not been tangibly or concretely deprived of any of it. It still owns the restaurant and everything inside the space. And it can still put every square foot of the premises to use, even if not for in-person dining use.

*Id.* The Sixth Circuit found that neither the coronavirus nor the Governor's shutdown orders created a direct physical loss of property or direct physical damage to it, explaining that "[a] loss of use simply is not the same as a physical loss." *Id.* at *3. In reaching its holding the Sixth Circuit cited to decisions from two sister circuit courts with approval. *Id.* (citing *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143-44 (8th Cir. 2021) (rejecting oral surgeon's claim that Iowa's gubernatorial order prohibiting non-emergency dental procedures was a "direct 'loss' to property"); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *1 (11th Cir. Aug. 31, 2021) (per curiam) (rejecting dentistry practice's claim that Georgia's shelter-in-place order caused "'direct physical loss or damage' to property")).[5]

---

[5] The Court acknowledges that there are some differences between this case, which involves a dental practice, and *Santo's Italian Café*, which involved a restaurant, and that the orders at issue are not identical. Further, the Sixth Circuit in *Santo's Italian Café* applied Ohio, not Michigan, law. However, despite these differences the Court finds that *Santo's Italian Café* is highly persuasive authority as it interprets the

The Sixth Circuit's *Santo's Italian Café* decision was more recently cited in a subsequent Sixth Circuit case, which vacated the district court's grant of summary judgment to the insured for business income lost as a result of COVID-19-related shutdown orders. *In re Zurich Am. Ins. Co.*, No. 21-0302, 2021 WL 4473398, at *1 (6th Cir. Sept. 29, 2021). The issue in *Zurich* was "whether the policy's coverage for 'direct physical loss of or damage to property' applies to Plaintiffs' loss of business income due to COVID-19-related government shutdown orders that halted their dine-in operation," and the Sixth Circuit found that it did not, and accordingly vacated the district court's order granting summary judgment to the insured and remanded for further proceedings consistent with the order. (*Id.* at *1-2, citing *Santo's Italian Café*).

---

"common and ordinary meaning" of "physical loss" and "physical damage." *See McGrath*, 290 Mich. App. at 439 ("Any terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries."). Further, the *Santo's Italian Café* decision is consistent with a prior Sixth Circuit decision applying Michigan law and holding that mold and bacterial contamination did not constitute physical damage or loss to the property under the applicable insurance policy because the insured failed to show tangible, physical damage to the property. *See Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 575 (6th Cir. 2012) ("[W]hile Universal certainly suffered a large inconvenience as a result of the mold and bacterial contamination of the Evergreen building, the damages resulting therefrom are not covered by the insurance policy issued by Federal. Universal did not suffer any tangible damage to physical property, nor were the Evergreen premises rendered uninhabitable or substantially unusable.").

This Court agrees with the Sixth Circuit that the ordinary meaning of the Policy language, "direct" "accidental physical loss or accidental physical damage" to property, does not include mere loss of use of the premises, absent tangible loss or damage to the property. Neither the COVID-19 virus nor that Executive Orders physically altered or affected the structural integrity of the property. *See Santo's Italian Café*, 2021 WL 4304607, at *4. The Policy language is unambiguous and must be applied as written. *See Henderson*, 460 Mich. at 354 ("The fact that a policy does not define a relevant term does not render the policy ambiguous.").

The *Santo's Italian Café* decision is also in line with the overwhelming majority of district courts applying Michigan law that have decided this same issue and held that insurance policies with the same or substantially similar policy language require tangible, concrete alteration to property in order to fulfill the requirement of direct physical loss or damage to property, and that COVID-19 and the Governor's Orders do not create a direct physical loss or damage to property. *See, e.g., Madison Square Cleaners v. State Farm Fire & Cas. Co.*, No. 21-cv-11273, 2021 WL 4239987, at *4 (E.D. Mich. Sept. 17, 2021) (Murphy, J.) (because "[t]here did not appear to be any physical change to the Covered Property because of the executive orders or COVID-19, only loss of its use," "Plaintiffs have failed to allege the required 'direct physical loss' which would be sufficient to trigger the

20

Policy's coverage."); *Chelsea Ventures, LLC v. Cincinnati Ins. Co.*, No. 20-13002, 2021 WL 2529821, at *4 (E.D. Mich. June 21, 2021) (Goldsmith, J.) (collecting cases and noting that "the great weight of decisions recently considering this issue in the midst of the pandemic have reached the same conclusion" – that physical loss and physical damage requires alteration to an insured property); *Dino Drop, Inc. v. Cincinnati Ins. Co.*, No. 20-12549, --- F. Supp. 3d ---, 2021 WL 2529817, at *4-5 n.3 (E.D. Mich. June 21, 2021) (Goldsmith, J.) (collecting the "overwhelming tide" of cases finding that "direct physical loss" requires tangible, concrete harm); *The Brown Jug, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-13003, 2021 WL 2163604, at *5 (E.D. Mich. May 27, 2021) (Friedman, J.) ("adopt[ing] the majority view and conclud[ing] that plaintiff has failed to sufficiently allege direct physical loss or damage to property – plaintiff's own or that of others – and, therefore, has failed to plausibly state a covered cause of loss or claim for relief under the Policy."), *appeal docketed*, No. 21-2644 (6th Cir. June 23, 2021); *St. Julian Wine Co. v. Cincinnati Ins. Co.*, No. 20-CV-374, 2021 WL 1049875, at *1, 3 (W.D. Mich. Mar. 19, 2021) (Jarbou, J.) (stating "there is no reasonable construction of 'physical loss' or 'physical damage' that encompasses the presence of a contagious virus in the general population" and noting that "[c]ourts are nearly unanimous in their agreement that such claims have no merit."); *Kirsch v. Aspen Am. Ins. Co.*, 507 F. Supp. 3d 835,

842 (E.D. Mich. 2020) (Cleland, J.) (concluding that "[l]ike other viruses, COVID-19 injures people but does not seem to cause any lasting damage to physical property. Because plaintiff's claim, as pled, alleges only a temporary loss of use of Plaintiff's property, the tangibility requirement implicit in the policy forecloses a claim."), *appeal docketed*, No. 21-1038 (6th Cir. Jan. 14, 2021); *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 484 F. Supp. 3d 492, 502 (E.D. Mich. Sept. 3, 2020) (Ludington, J.) (finding similar insurance coverage terms (requiring "accidental direct physical loss to Covered Property") were unambiguous and "plainly require[d] Plaintiff to demonstrate some tangible damage to Covered Property.").[6]

This construction also harmonizes with the Policy as a whole. This is particularly evident in the context of the Policy provision addressing "Business Income and Extra Expense" coverage, which is limited by the "Period of Restoration." (See Policy at pp. 35-36, 116-17.) The "Period of Restoration" ends

---

[6] Defendant further contends that the overwhelming majority of courts throughout the country have reached the same conclusion – requiring a showing of "tangible damage" to the covered property – including particularly cases involving dental offices alleging financial losses due to virus-related orders temporarily banning elective dental procedures, as alleged in this case. (*See* Def.'s Am. Mot. at pp. 11-13, PageID.2611-13 (collecting cases).) *See also St. Julian*, 2021 WL 1049875, at *3 (collecting cases around the country "that have examined *identical* language in the same context and have reached the same conclusion") (emphasis in original).

on the earlier of: (1) the date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality, or (2) the date when business is resumed at a new permanent location." (*Id.* at pp. 55-56, 124.) This provision plainly contemplates actual repair or replacement of physically damaged or lost property. *See The Brown Jug*, 2021 WL 2163604, at *5 ("If the property is partially destroyed, it would need to be 'repaired, rebuilt, or replaced.' If property is completely destroyed, a policy holder would need to resume business 'at a new permanent location.'"); *Dino Drop*, 2021 WL 2529817, at *6 ("[C]ourts have held that cleaning, rearranging furniture, or installing partitions cannot reasonably be considered repairing, rebuilding, or replacing."); *Chelsea Ventures*, 2021 WL 2529821, at *6 (same). To reopen its business, Plaintiff had no need to repair, rebuild, or replace lost property, but instead simply needed to engage in remediation measures such as cleaning and reconfiguring physical spaces, which does not qualify as repairing, replacing or rebuilding. *See, e.g., The Brown Jug*, 2021 WL 2163604, at *5 (allegations that plaintiff needed to disinfect and rearrange furniture insufficient to show that plaintiff had to "repair, rebuild, or replace any property"); *Dino Drop*, 2021 WL 2529817, at *5 (explaining that "the virus may be eliminated simply by cleaning and disinfecting surfaces," and that such basic cleaning does not

constitute physical loss or damage); *Chelsea Ventures*, 2021 WL 2529821, at *6 (same).

Further, to the extent Plaintiff contends that coverage exists in this case because the Policy does not contain a virus exclusion (SAC ¶¶ 15, 93, PageID.1831, 1853), as Defendant correctly explains, an exclusion only become relevant if Plaintiff first meets its burden of showing that coverage exists – that there is direct physical loss to the premises. (Def.'s Am. Mot. at pp. 22-23, PageID.2622-23.) Specifically, "Michigan law provides that courts must first determine if the policy provides coverage to the insured; if it does, only then do courts 'ascertain whether that coverage is negated by an exclusion.'" *Chelsea Ventures*, 2021 WL 2529821, at *9 (citing *Heniser*, 449 Mich. at 172). "Thus, the policy's exclusionary provisions cannot be used to establish coverage in the first instance," and the absence of a viral exclusion in this case is immaterial. *Chelsea Ventures*, 2021 WL 2529821, at *9; *see also The Brown Jug*, 2021 WL 2163604, at *5 n.2; *Dino Drop*, 2021 WL 2529817, at *9 ("Because Plaintiffs have not shown that they are entitled to coverage in the first instance under the business income, extra expense, or civil authority provisions, the absence of a virus exclusion is immaterial."); *St. Julian*, 2021 WL 1049875, at *4 ("Courts look at the Policy to interpret the Policy. A non-existent provision does not alter the unambiguous language of the Policy.").

This Court finds, consistent with the above decisions, and based on Plaintiff's allegations in the Second Amended Complaint and the terms of the Policy at issue, that Plaintiff has failed to plausibly allege that COVID-19 and/or the Executive Orders caused accidental physical loss or accidental physical damage to the covered property. Plaintiff has not plausibly alleged that COVID-19 caused physical damage to the property or adversely affected the structural integrity of the property. At best, it contends that it is "likely" customers, employees, and or other visitors to its premises "prior to, during, and after the government shutdown" were infected with the virus "and thereby caused physical damage to the property." (SAC ¶ 57, PagedID.1843.) But there are no plausible allegations in the SAC of physical, tangible alteration to Plaintiff's property caused by the COVID-19 virus or Executive Orders. *See Troy Stacy Enterprises Inc. v. Cincinnati Ins. Co.*, No. 1:20-cv-312, 2021 WL 4346688, at *5 (S.D. Ohio Sept. 24, 2021) (noting that "the claim that the virus causes 'structural alterations' and 'property damage' strains the plausibility requirement to its breaking point" and that "[a] court need not set aside common sense when reading complaints"). The virus COVID-19 harms people, not property. *See Kirsch*, 507 F. Supp. 3d at 842 ("Like other viruses, COVID-19 injures people but does not seem to cause any lasting damage to physical property. Because Plaintiff's claim, as pled, alleges only a temporary loss of use of Plaintiff's property,

the tangibility requirement implicit in the policy forecloses a claim under the practice income provision.").

Further, the Plaintiff's property was not rendered unusable or uninhabitable by the virus, or the government Orders. Rather, the Governor's orders simply prohibited one use of the property – non-urgent dental procedures – while permitting other procedures, and Plaintiff admits that customers and employees were on the premises providing and/or accessing these services while the Orders were in effect. (*See* SAC at ¶¶ 57-59, 67, 69-72, PageID.1843, 1845-47.) As the Sixth Circuit explained in *Santo's Italian Café*, "[a] loss of use simply is not the same as a physical loss." *Santo's Italian Café*, 2021 WL 4304607, at *3 ("It is one thing for the government to ban the use of a bike or a scooter on city sidewalks; it is quite another for someone to steal it.") (citations omitted); *see also Dino Drop*, 2021 WL 2529817, at *7 (finding that COVID-19 and the civil orders did not render the property uninhabitable or substantially unusable, as "[t]ables, chairs, kitchen equipment, and the buildings remained functional as such, as any contamination could be removed simply by disinfecting surfaces"); *Chelsea Ventures*, 2021 WL 2529821 (same). Plaintiff thus has failed to plausibly allege physical loss or physical damage based on a loss of use of its premises.

26

The Court therefore concludes that Plaintiff has failed to plausibly allege physical loss or physical damage to the property as required under the Policy, and it is not entitled to coverage for business income or extra expense, and those claims are dismissed.

### B.    The Policy's Civil Authority Provision

Plaintiff also alleges coverage under the Policy's Civil Authority provision, based on the Governor's Orders. (SAC ¶¶ 117-30, PageID.1857-59.) Defendant asserts that Plaintiff fails to allege facts to meet the requirements for this coverage.

As explained above, the Policy's Civil Authority provision provides:

> When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
>
> (a)    Access to the area immediately surrounding the damaged property is prohibited by a civil authority as a result of the damage; and
>
> (b)    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property…..

(*Id.* at pp. 36, 117.)

Plaintiff has failed to plausibly plead any allegations that meet these requirements. First, this provision plainly requires physical loss or damage to *other* property, which in turn results in civil authorities issuing an order prohibiting access to the insured premises. Plaintiff's Second Amended Complaint does not include any factual allegations concerning physical loss or damage to other property. Similarly, as discussed above, the Executive Orders did not prohibit access to Plaintiff's property, as Plaintiff admits that its customers and employees did continue to access the premises. (*See* SAC at ¶¶ 57-59, 67, 69-72, PageID.1843, 1845-47.)

Plaintiff's reliance in its Response brief on *Sloan v. Phoenix of Hartford Insurance Co.*, 46 Mich. App. 46 (1973), *Southlanes Bowl, Inc. v. Lumbermen's Mutual Insurance Co.*, 46 Mich. App. 758 (1973), and *Allen Park Theatre Co. v. Michigan Millers Mutual Insurance Co.*, 48 Mich. App. 199 (1973) is misplaced. These three cases were decided in the context of widespread looting, arson, and other destruction of property in the City of Detroit in 1967 and 1968, and addressed only whether there was business interruption coverage when there was no damage to the insured's own property. *See Southlanes*, 46 Mich. App. at 760; *Sloan*, 46 Mich. App. at 51; *Allen Park Theatre*, 48 Mich. App. at 201. However, these cases did not address what kind of damage to the property of others was required to trigger coverage.

28

The overwhelming majority of courts that have considered this issue have rejected coverage in the COVID-19 context. *See, e.g., Chelsea Ventures*, 2021 WL 2529821, at *9 ("Because Chelsea is unable to plausibly allege physical loss or damage to other property or that it was prohibited from accessing its own property by virtue of a civil order, the civil authority provision under the policy does not apply."); *Dino Drop*, 2021 WL 2529817, at *8 (finding the civil authority provision did not apply because plaintiffs failed to "plausibly allege physical loss or damage to other property as a result of COVID-19" or that they were prohibited access to their property); *Kirsch*, 507 F. Supp. 3d at 842-43 (finding that the policy's civil authority provision was not implicated by the COVID-19 executive orders because Plaintiff could point to no physical damage to other property, and "failed to establish that the COVID-19 executive order was a direct result of damage to existing property as opposed to an attempt to curtail the virus's spread and future damage"); *see also Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020) (holding that because the plaintiff's dental offices were permitted to perform emergency and non-elective work, the plaintiff failed to allege that access to its premises was prohibited by government order).

Thus, this Court finds that Plaintiff has failed to state a claim for Civil Authority coverage under the Policy, and accordingly Defendant's motion to dismiss is granted as to Count I-VI of Plaintiff's SAC.

### C.   Plaintiff's Claims for an Appraisal and for Violation of the Michigan Uniform Trade Practices Act

Defendant argues that Plaintiff's remaining claims for an appraisal and penalty interest pursuant to the Michigan Uniform Trade Practices Act in Counts VII and VIII of the SAC are contingent on a finding that the Policy provides coverage for the alleged losses, and that because there is no coverage, these claims necessarily fail. (Def.'s Am. Mot. at pp. 24-25, PageID.2624-25.) Plaintiff's Response brief did not respond to this argument, and thus Plaintiff has waived any opposition to it. *See Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838-39 (E.D. Mich. 2016) ("A plaintiff abandons undefended claims.") (citing *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007)); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (explaining that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim.").

The Court finds that Defendant's argument has merit and that Plaintiff fails to state a claim for appraisal and violation of the Michigan Uniform Trade Practices Act in Count VII and VIII, and accordingly dismisses these claims.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motions for Leave to File Supplemental Authority (ECF Nos. 24, 25), **GRANTS** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 20), and **DISMISSES** Plaintiff's Second Amended Complaint.


IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: October 21, 2021

31